JUSTICE COTTER
dissents.
¶61 I dissent from the Court’s disposition of Issue 1. Because I would reverse the District Court’s denial of Barnaby’s motion to suppress the evidence discovered during the search of his home, I would not reach Issues 2 and 3.
¶62 There was a multitude of miscellaneous information cited in the Application for Search Warrant to suggest that Sheridan knew how to *237 cook methamphetamine, and that she had been observed purchasing or in possession of the precursors to methamphetamine on more than one occasion. However, assuming the Application contained all relevant information, at no time during the nearly two years of investigation leading up to the search of Barnaby’s home were the tribal police alerted that Sheridan was engaged somewhere in the actual manufacture of methamphetamine. And I submit that, given the sparse and unreliable information these officers possessed concerning Barnaby, there was no probable cause to support the conclusion that a lab was located in his home.
¶63 The Application reflects that a concerned citizen “reported” that Sheridan was “living with a Barnaby,” and that he/she “believed” that Sheridan was operating a methamphetamine lab at his residence. Then, a “citizen informant” reported that Sheridan was operating a methamphetamine lab at the Barnaby residence. As the Court concedes at ¶ 13, the Application did not state the source of either citizen’s information, nor did it indicate whether either person had personally observed the lab operation.
¶64 The sole remaining allegations involving Barnaby, as detailed in ¶¶ 15-16 of the Court’s Opinion, summarize activities ostensibly observed on Bamaby’s property that, standing alone, were neither unlawful nor illegal. The Court cites as persuasive the fact that Barnaby apparently took steps to prevent neighbors from observing his activities. Ironically, we have held that the steps taken by a person to prevent observation of his or her activities constitutes evidence of an actual expectation of privacy, a reasonable and lawful goal. See State v. Bullock (1995), 272 Mont. 361, 384, 901 P.2d 61, 74-75, and State v. Siegal (1997), 281 Mont. 250, 274-75, 934 P.2d 176, 190, overruled in part and on other grounds by State v. Kuneff, 1998 MT 287, 291 Mont. 474, 970 P.2d 556. Here, however, we conclude that such conduct contributes to a finding of probable cause to search his home.
¶65 In Reesman, this Court analyzed the several possible sources of an informant’s information. From this analysis emerged a three-prong test that has repeatedly been used by this Court to determine whether probable cause exists for the issuance of a search warrant:
1) Was the informant anonymous or was the information provided hearsay? If so, independent corroboration of his or her information is required;
2) If the informant was not anonymous, was the information provided based on personal observation of criminal activity or was *238 the information hearsay? If hearsay, independent corroboration is required; and
3) If the information from a non-anonymous informant was gathered by personal observation of criminal activity, was the informant reliable?
Reesman, ¶¶ 28-31. Here, the Application does not tell us whether the “concerned citizen” was anonymous, nor does it relate that the information provided by either citizen was based on personal knowledge. Thus, under Reesman and its considerable progeny, independent corroboration of their information was required. No such corroboration was sought or obtained in this case, yet we find no fault. To the contrary, we conclude that “the fact that the application for a warrant did not include a specific account of the circumstances under which some informants viewed the events, or whether the two citizens based their reports on personal observations, does not preclude a court from finding probable cause.” See ¶ 46. We then proceed to conclude that Reesman’s “strict rules” cannot be reconciled with the flexibility of the “totality of the circumstances” test that the United States Supreme Court espoused in Illinois v. Gates. See ¶ 41.
¶66 In justifying its result, the Court both exaggerates the complexity of Reesman and oversimplifies Gates. Most importantly, the Court refuses to acknowledge that Gaies-like Aeesmcm — requires the magistrate to consider, among the totality of the circumstances, the “veracity” and “basis of knowledge” of persons supplying hearsay information. Gates, 462 U.S. at 238, 103 S. Ct. at 2332. The Court reaffirmed in Gates that “wholly conclusory statements,” or statements that an informant “believes” that a crime is being committed, will not do. The Court said that a magistrate’s determination of probable cause “cannot be a mere ratification of the bare conclusions of others.” Gates, 462 U.S. at 239, 103 S. Ct. at 2333. In Gates, the police conducted significant independent police work to corroborate the informant’s tip. In fact, it was because of the independent corroboration provided by the police in Gates that the Court concluded that there was a substantial basis for the issuance of the warrant. Gates, 462 U.S at 246, 103 S. Ct. at 2336.
¶67 Similarly, in Rinehart, we analyzed an application for search warrant that relied in part upon an anonymous Crimestoppers’ tip. The Court concluded that the Crimestoppers’ tip, by itself, was inadequate to support probable cause without further investigation to corroborate the information, but agreed that it merited consideration under the “totality of the circumstances” test. Rinehart, 262 Mont. at *239 212-13, 864 P.2d at 1223. Notably, the totality of the circumstances in Rinehart included information from a reliable, non-anonymous informant who had seen the marijuana operation first-hand, and had described to the police, in great detail, its location and operation. Rinehart, 262 Mont. at 212, 864 P.2d at 1224. In essence, the Rinehart magistrate used the Crimestopper tip to corroborate the known informant’s first-hand information. Rinehart, 262 Mont. at 211, 864 P.2d at 1223.
¶68 Here, by contrast, there was no known first-hand informant and no independent police investigation. In fact, there was no independent corroboration of criminal activity at Bamaby’s home-from any source-police or otherwise. Ignoring this glaring deficiency, we stretch the “flexible” totality of the circumstances test beyond its intended limit, concluding in essence that one “wholly conclusory statement” from an unreliable source (see Gates, infra) magically becomes reliable by virtue of its pairing with a similar statement from a second unreliable source. Respectfully, all the discussion in the world cannot disguise the fact that we have taken two unreliable and uncorroborated allegations of criminal doings, added in a report detailing indisputably lawful front-yard activities, and, because of Sheridan’s association with the occupant of the home, arrived at a sum finding of probable cause to search Barnaby’s home, when in reality the sum is still zero. Without question, the “totality of the circumstances” which we conclude supports the search of Barnaby’s home is not nearly as substantial or reliable as were the circumstances in either Rinehart or Gates.
¶69 The most troubling aspect of the Court’s Opinion is its pronouncements regarding Reesman. Whereas Reesman was once the law, relied upon by district courts and this Court in dozens of rulings and opinions, and by law enforcement in countless analyses, its “neat set of legal rules” no longer apply; now, its guidelines are merely “useful.” ¶ 41.1 cannot understand why we would choose to abandon a clear guideline against which police officers evaluate the sufficiency of their evidence to justify the issuance of a warrant, in favor of no guidelines at all. We have effectively replaced a level of predictability with one of uncertainty and randomness.
¶70 Montana homes have long enjoyed special protection under our search and seizure jurisprudence. We have said, “The home is the most sanctified of all ‘particular places.’ ” State v. Graham, 2004 MT 385, ¶ 22, 325 Mont. 110, ¶ 22, 103 P.3d 1073, ¶ 22. Today, however, we have relaxed the requirements for a search warrant for a man’s home, *240 finding that vague uncorroborated accusations, coupled with guilt by association, is enough to justify the issuance of a warrant. And we have in the process undone our carefully analyzed search warrant jurisprudence. In accordance with long-established federal and state case law, Barnaby’s motion to suppress should have been granted.
¶71 I therefore dissent from our decision to affirm the District Court’s denial of Barnaby’s motion to suppress.